UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

DOUGLAS MILCZAK,

        Plaintiff,

v.

GENERAL MOTORS, LLC,

        Defendant.
_____/

Case No. 21-cv-

Hon.

ERIC STEMPIEN (P58703)
STEMPIEN LAW, PLLC
Attorneys for Plaintiff
38701 Seven Mile Road, Suite 130
Livonia, MI 48152
(734)744-7002
eric@stempien.com
_____/

## COMPLAINT AND JURY DEMAND

Plaintiff, Douglas Milczak, by and through his attorneys, Stempien Law, PLLC, hereby complains against Defendant General Motors, LLC, and in support thereof states:

1. Plaintiff Douglas Milczak ("Milczak" or "Plaintiff") is a resident of the City of Allen Park, Wayne County, Michigan.

2. Defendant General Motors, LLC ("GM" or "Defendant") is a foreign limited liability company with its principal place of business located in the City of Detroit, Wayne County, Michigan.

1

3. This is an action brought under the Age Discrimination in Employment Act ("ADEA").

4. Jurisdiction is vested upon this Court for Plaintiff's claims pursuant to 29 USC §623 and 28 USC §1331.

5. Plaintiff has exhausted all administrative remedies and received a Final Agency Decision from the Equal Employment Opportunity Commission ("EEOC") on or about April 21, 2021.

6. The events giving rise to this cause occurred in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

7. Plaintiff became employed as a Senior Manufacturing Engineer with GM in or around August 1994.

8. In or around May 2016, Plaintiff moved from GM's Central Office to GM's Detroit-Hamtramck plant, working in a Mechanical Engineering Plant position.

9. While employed at the Detroit-Hamtramck plant, Plaintiff reported to Mike Lazaroff ("Lazaroff") until about July 2019.

*Defendant's Harassment of Plaintiff*

10. Throughout the time Plaintiff reported to Lazaroff, Lazaroff displayed intimidating, demeaning, and harassing behavior toward older employees, including Plaintiff.

11. Lazaroff would harass Plaintiff by calling him names, such as "old f***er," "old fart," "my bitch," "dickhead," and "mother***er," in front of Plaintiff's coworkers.

12. Lazaroff also continually threatened to remove Plaintiff from the plant.

13. By way of example of Lazaroff's harassing behavior, on or about June 25, 2019, Plaintiff discussed an idea to save GM money, and Lazaroff responded, "Just drop it, you old f***er.  You will never get paid for this," referring to GM's payout program for cost-saving ideas.

14. To this day, Plaintiff has not been monetarily recognized for multiple cost-saving ideas that he initiated while at GM's Detroit-Hamtramck plant, which amount to approximately $6 million in cost-savings for GM.

15. Plaintiff discussed how Lazaroff's behavior affected him, but Lazaroff continued to harass him in front of his coworkers.

16. Plaintiff also discussed Lazaroff's behavior with both Lazaroff's boss, Jim Donlin ("Donlin"), and Detroit-Hamtramck's Human Resources

Representative, Sean Tacket ("Tacket").  Both Donlin and Tacket failed to correct Lazaroff's behavior.

### *Lazaroff Transfers Plaintiff to Another Position in Retaliation, Resulting in Further Harassment*

17. A few days before Detroit-Hamtramck shut down for Christmas break in December 2018, Lazaroff informed Plaintiff that he was being transferred to the General Assembly Maintenance Lead position, providing him only three days to train under the employee leaving the position, which was further limited by the fact the employee leaving still had to maintain the plant during Plaintiff's training.

18. Shortly after Plaintiff was transferred to the Maintenance Lead job position, GM's skilled trades employees began harassing Plaintiff. Plaintiff reported the age-based harassment to his supervisors, but neither Lazaroff nor Donlin provided any solutions or support and took no action to stop the harassment.

19. In or around January 2019, Plaintiff started experiencing escalated stress symptoms, such as migraine headaches, fatigue, stomach problems, and anxiety.

20. On or about May 21, 2019, Plaintiff finally had a meeting with Lazaroff and a few of the skilled trades employees. During this meeting, Lazaroff sided with the trades and provided Plaintiff with no support.

21. On or about May 22, 2019, Plaintiff found a picture in the breakroom showing a mouse dead in a mousetrap and several mice lined-up behind it to have nonconsensual sex with the mouse. Plaintiff's name was labeled on the trapped mouse, and the skilled trades were labeled on the lined-up mice. The bottom of the picture read, "When you're down and out, everyone wants to screw you."

22. Plaintiff reported the mouse picture to Lazaroff, to which Lazaroff responded that he *might* report it to GM's Human Resources Department.

23. Plaintiff reported the incident to GM's Human Resources Department himself, but Human Resources refused to provide Plaintiff with its policies and procedures for harassment investigations.

24. During Human Resources' investigation of the mouse picture, Plaintiff learned that GM's anti-harassment training for the skilled trades was only a twenty-minute presentation while the anti-harassment training for salaried workers was two classes for one to two hours each.

25. Throughout the summer of 2019, the skilled trades employees further harassed Plaintiff, saying they were upset about the Human Resources' investigation.

26. On or about June 27, 2019, GM's Human Resources informed Plaintiff that its investigation was closed and that it would be taking no further action.

### *Defendant Transfers Plaintiff's Position Again and Replaces Him with a Younger and Less Experienced Employee*

27. On or about July 10, 2019, Plaintiff emailed Donlin asking for support to request Human Resources to take further steps in its harassment investigation.

28. A few hours after this email, Lazaroff told Plaintiff that he could handle General Assembly by himself and Plaintiff would be reassigned to the CT6/Omega Body Shop Maintenance in a few weeks.

29. The following day, Plaintiff could not work due to a stress-induced headache. In retaliation for Plaintiff calling in sick, Lazaroff expedited the timeline for Plaintiff to start in Body Shop Maintenance.

30. On or about July 15, 2019, Plaintiff discovered a younger and less experienced employee was taking his position in General Assembly, demonstrating that Lazaroff's statement that he would be assuming Plaintiff's General Assembly position was false and a pretext for age discrimination.

31. While in Body Shop Maintenance, Plaintiff reported to Damon Ferraiuolo ("Ferraiuolo"), who similarly did not train Plaintiff or provide him with assignments, which resulted Plaintiff losing opportunities for overtime and further escalated Plaintiff's stress and anxiety.

### *Defendant Punishes Plaintiff for Attendance Based on His Stress-Induced Headaches*

32. On or about August 8, 2019, Ferraiuolo had Plaintiff meet with Donlin, Tacket, and Jason McKelvey ("McKelvey"), who was the Body Shop Area Manager.

33. During this meeting, the above-named GM employees provided Plaintiff with an attendance memo, reprimanding him for calling-in sick the same day of a missed shift on days he was experiencing stress-induced headaches.

34. In this meeting, Plaintiff also informed Tacket of Lazaroff's harassment, but Tacket refused to take any steps toward remediation, stating he needed an email from Plaintiff to take any steps.

35. In further retaliation, Plaintiff was also informed during the August 8, 2019 meeting that he was going to be moved to second shift, to which Plaintiff stated that this would increase his stress and detrimentally affect his marriage and personal life. Plaintiff further requested for GM move one of its Contract Site Employees or younger Paint Shop Maintenance employees to second shift instead, but Plaintiff was moved to second shift anyway.

36. Plaintiff's move to second shift affected his stress and associated symptoms as well as opportunities for overtime.

37. Because of this attendance memo, Plaintiff applied and was conditionally approved for intermittent leave under the Family Medical Leave Act ("FMLA").

38. Based on harassment Plaintiff observed from Lazaroff and Ferraiuolo toward another employee for taking FMLA, however, Plaintiff feared further harassment and reprimand if he were to use FMLA leave for his stress-induced headaches. Thus, Plaintiff has not used any FMLA leave for fear of retaliation, harassment, and reprimand.

39. In or around December 2019, Plaintiff was informed by a Human Resources Representative that GM did not have a written attendance policy for salary employees. Further, other GM salaried employees called in sick the same day of their missed shift without receiving a similar memo, and thus, the August 8, 2019 attendance memo was directed solely at Plaintiff.

***Defendant Announces Detroit-Hamtramck Plant Will Shut Down and Promises to Transfer Employees, but Selects Younger, Less Qualified Employees for Positions in Plaintiff's Preferred Locations***

40. In or around November 2018, Defendant announced it was closing the Detroit-Hamtramck with no other product lines planned.

41. In late-2019, Defendant announced it was going to retool the Detroit-Hamtramck plant for the manufacture of electric vehicles.

42. Following Defendant's November 2018 announcement, GM announced that its Human Resources department would be available to assist affected employees in finding new positions within GM.

43. Plaintiff stated that his preference was to stay at the Detroit-Hamtramck plant after closing, or to transition to Romulus or Toledo in order to avoid relocating for family reasons.

44. Throughout the process of transferring Detroit-Hamtramck employees, Defendant selected younger, less experienced employees to fill positions that Plaintiff was qualified for at his preferred GM sites.

45. Further, Donlin retaliated against Plaintiff by blocking him from successfully transferring to the Romulus site as a Maintenance Lead.

46. Additionally, Defendant's Human Resources representative Jason Williams ("Williams") informed Plaintiff that GM did not have a preferred resume format, but Plaintiff later learned Williams misinformed him and that GM had both a preferred resume format and a slide presentation about job searching that Williams did not provide to Plaintiff.

47. After Human Resources failed to find a position for Plaintiff at his preferred sites, on or about January 28, 2020, Plaintiff did his own search and accepted a position at Defendant's Warren site with the understanding that Plaintiff would be assigned to the Detroit-Hamtramck retooling project.

48. Plaintiff's Warren position had him physically located at the Detroit-Hamtramck plant, and in or about August 2020, Plaintiff arrived at his Detroit-Hamtramck desk to find a disturbing printed image of an old man with his eyes poked out.

49. Similarly, a few months later, Plaintiff found a *Michael Jackson's Greatest Hits* CD placed on his Detroit-Hamtramck desk.

### *Defendant Continues to Retaliate Against Plaintiff in Denying Him Proper Compensation*

50. Defendant's retaliation and harassment also affected Plaintiff's compensation.

51. In or about February 2018, Plaintiff's performance was reviewed for 2017, and he received a below average percent increase in salary, despite his numerous contributions to the Detroit-Hamtramck plant including approximately $6 million in manufacturing cost savings.

52. During the February 2018 review, younger Detroit-Hamtramck employees with less experience and fewer cost-saving contributions received higher percent raises than Plaintiff.

53. In or about February 2019, Plaintiff's performance was reviewed for 2018, and he received a below average percent increase in salary, the lowest percent increase he ever received during his entire career with Defendant.

54. Prior to Plaintiff's review, he was told that his $6 million in cost-saving contributions would be recognized in 2019, but this was untrue.

55. After his review, Donlin claimed Defendant now had a condition for salaried compensation where increases were based on managing hourly production employees. Plaintiff, however, did manage hourly Skilled Trades and Contractor Trades, which was not considered in his compensation review.

56. In or about February 2020, Plaintiff's performance was reviewed for 2019, and he again received a below average percent increase in salary.

***Plaintiff Files a Charge of Discrimination with the Michigan Department of Civil Rights and Equal Employment Opportunity Commission Against Defendant***

57. On or about December 11, 2019, Plaintiff filed a charge of discrimination with the EEOC and Michigan Department of Civil Rights ("MDCR") against Defendant for its conduct outlined above.

58. In his charge, Plaintiff asserted discrimination and harassment based on his age and retaliation based on engaging in protected activities in reporting the discrimination and harassment.

59. On or about April 21, 2021, Plaintiff received a Right to Sue letter from the EEOC.

## COUNT I
## VIOLATION OF THE ADEA (29 USC §623)
## AGE DISCRIMINATION

60. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

61. Plaintiff is a member of the protected class because he was over the age of 40 at the time Defendant started discriminating, harassing and retaliating against him.

62. Plaintiff was subject to adverse employment action when he was not monetarily recognized for his cost-saving contributions, was transferred to multiple positions within days-notice, was replaced by younger and less experienced employees, was not provided job opportunities at his preferred GM sites where younger and less experienced employees were transferred into positions he was experienced in, was provided no support to transfer to his preferred GM sites, and received below-average compensation increases.

63. Plaintiff's age was a significant and motivating factor in the adverse employment actions taken against him.

64. In addition, the comments of Plaintiff's supervisors and the harassment from his co-workers show a policy and/or practice of disfavoring older employees.

65. As a direct and proximate result of Defendant's violations, Plaintiff has sustained damages, including, but not limited to, lost past and future wages, lost past and future employment benefits, loss of earning capacity, emotional distress, and attorney fees.

## COUNT II
## VIOLATION OF THE ADEA
## HOSTILE WORK ENVIRONMENT (HARASSMENT)

66. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

67. Plaintiff is a member of a protected class because he was over the age of 40 at the time of the subject harassment.

68. Plaintiff was subject to unwelcome verbal conduct, including but not limited to the verbal conduct more fully described above.

69. The unwelcome verbal conduct was based on Plaintiff's age.

70. The unwelcome verbal conduct had the purpose and/or effect of interfering with Plaintiff's work environment.

71. As a direct and proximate result of Defendant's violations, Plaintiff has suffered damages as fully set forth in paragraph 65 of this Complaint.

## COUNT III
## VIOLATION OF THE ADEA - RETALIATION

72. Plaintiff hereby incorporates by reference all previous paragraphs of this Complaint as if fully set forth herein.

73. Plaintiff is a member of a protected class because he was over the age of 40 at the time of the subject retaliation.

74. Plaintiff was subject to retaliation such as discipline, job duty changes, and reduced compensation, as more fully described above.

75. The retaliation was based on Plaintiff's protected activity of reporting harassment and discrimination.

76. As a direct and proximate result of Defendant's violation, Plaintiff has suffered damages as fully set forth in paragraph 65 of this Complaint.

WHEREFORE, Plaintiff Douglas Milczak prays that this Honorable Court enter a judgment in his favor against Defendant General Motors, LLC in an amount that this Court deems fair and just, plus costs, interest and attorney fees.

## JURY DEMAND

Plaintiff Douglas Milczak hereby demands a trial by jury of the within cause.

STEMPIEN LAW, PLLC

*/s/ Eric Stempien*
By: Eric Stempien (P58703)
Attorney for Plaintiff

Dated: June 24, 2021